UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

TENTANDTABLE.COM, LLC

        Plaintiff,

   v.

GORILLA BOUNCE LLC,

        Defendant.

───────────────────────────────

21-CV-1318-LJV
DECISION & ORDER

## <u>INTRODUCTION</u>

On December 30, 2021, the plaintiff, Tentandtable.com, LLC ("TAT"), filed a complaint alleging trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), and trade dress infringement and unfair competition under New York common law. Docket Item 1.  The defendant failed to appear and defend this action, and the time to do so expired.  As a result, the plaintiff asked the Clerk of the Court to enter a default, Docket Item 8, and the Clerk did so on March 17, 2022, Docket Item 9.

On March 22, 2022, the plaintiff moved for a default judgment under Federal Rule of Civil Procedure 55(b)(2).  Docket Item 10.  The plaintiff seeks a permanent injunction and $11,774.00, which includes $11,092.00 in attorneys' fees and $682.00 in costs.  *Id*.  After carefully reviewing the plaintiff's motion and supporting documents, this Court grants the plaintiff's motion.[1]

─────────────────────

[1] The Court very slightly reduces the requested attorneys' fees as addressed below.

**FACTS**[2]

TAT supplies commercial equipment that consumers can purchase or rent for events.  Docket Item 1 at ¶ 5.  At issue in this case are TAT's black and yellow Zoom XLT Inflatable Bounce House Blowers, which it markets and sells in several horsepower and motor-size options.  *Id.* at ¶¶ 12, 14 and 15.  TAT alleges that it began using its "distinctive [black and yellow] color design on its [b]lowers" in about January 2015.  *Id.* at ¶¶ 14, 20.  And it says that since on or about March 1, 2015, it has marketed and sold those blowers in interstate commerce and through e-commerce channels, such as Amazon.  *Id.* at ¶ 21.

TAT alleges that the defendant, Gorilla Bounce LLC ("Gorilla"), also manufactures, markets, and sells blowers for inflatables; in fact, TAT says, Gorilla markets products in interstate commerce that copy and incorporate TAT's trade dress.  *Id.* at ¶ 26.  According to TAT, Gorilla's blowers, which are of inferior quality and offered at a lower price, bear an identical color design to its blowers.  *Id.* at ¶¶ 30-31.  And TAT says that by marketing and selling its infringing blowers "through overlapping channels of trade to the same customers," Gorilla creates "a likelihood of confusion as to the source, affiliation, or sponsorship . . .  on the part of the ordinary customer."  *Id.* at ¶¶ 35-36.

On July 28, 2021, counsel for TAT e-mailed and mailed a letter to Gorilla asking that it cease and desist "any on-going activities related to blowers having a housing that

---

[2] On a motion for a default judgment, the court accepts the factual allegations in the complaint as true.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (discussing Fed. R. Civ. P. 55(b)(2)).

is black and yellow," including a request that Gorilla remove all advertisements for, and cease all sales of, the infringing blowers.  Docket Item 1 at ¶ 37; Docket Item 1-3 (Complaint Exhibit C).  After more than a month passed without any response, on September 8, 2021, TAT's counsel again corresponded with Gorilla, enclosing its prior letter and repeating its requests.  Docket Item 1 at ¶¶ 38, 39; Docket Item 1-4 (Complaint Exhibit D).  But Gorilla still did not respond, Docket Item 1 at ¶ 39, the infringement continued, *id.*, and TAT commenced this action.

The complaint was served on January 31, 2022.  Docket Item 6.  After Gorilla failed to appear and respond to the complaint, on March 17, 2022, TAT requested entry of a default, Docket item 8, and the Clerk of the Court entered a default that same day, Docket Item 9.

A few days later, TAT moved for a default judgment.  Docket Item 10.  TAT's initial attempt at serving that motion, addressed to Gorilla at "707 Kings Road, Schenectady, NY 12304," was returned as undeliverable, but a forwarding address of "P.O. Box 166 Altamont, NY 12009" was provided.  Docket Item 13.  TAT then resent the motion addressed to the forwarding address.  *Id.*  Likewise, this Court's text order setting the briefing schedule for the motion was mailed to Gorilla and returned, and the same forwarding address was provided.  *See* Docket Item 12.  The Court similarly remailed the text order to the forwarding address, *id.*, and has not received notice that its second mailing was returned.

## DISCUSSION

### I.   DEFAULT JUDGMENT

To obtain a default judgment, a party first must secure a clerk's entry of default by demonstrating, "by affidavit or otherwise," that the opposing party "has failed to plead or otherwise defend" the case.  Fed. R. Civ. P. 55(a).  In deciding whether to enter a default judgment, the court accepts the factual allegations in the complaint as true and determines whether the alleged facts state a valid claim for relief; the court also has the discretion to require further proof, if necessary.  *Au Bon Pain Corp.,* 653 F.2d at 65.  "A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction."  *Am. Auto. Ass'n, Inc. v. AAA Logistics, Inc.*, No. 18-CV-6040-FPG, 2019 WL 1349283, at *4 (W.D.N.Y. Mar. 26, 2019) (quoting *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F.Supp.2d 154, 157 (E.D.N.Y. 2013) (internal quotation omitted).  Additionally, because "[t]he Lanham Act allows an award of attorney's fees . . . in 'exceptional cases' where a defendant demonstrates 'willful infringement[,]' . . . [t]he Court has the discretion to make such an award" when a defendant's "default 'gives rise to an inference of willfulness.'"  *Am. Auto,* 2019 WL 1349283 at *5.

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors [that] apply to a motion to set aside entry of default."  *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258(JS)(AKT), 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)).  Those factors include: "(1) whether the defendant's

default was willful; (2) whether the defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.* "[P]rior to entering default judgment, a district court 'is required to determine whether the [plaintiff's] allegations establish the [defendant's liability] as a matter of law.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citation omitted).

"A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co., Inc. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (citation omitted). "While a defendant need not establish his defense conclusively, he must 'present evidence of facts that, if proven at trial, would constitute a complete defense.'" *Krevat,* 2014 WL 4638844, at *6 (citation omitted). "[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment." *Id.*

But that does not mean that every plaintiff who seeks a default judgment because a defendant has not answered is entitled to one.

> The fact that a complaint stands unanswered does not, however, suffice to establish liability on [the] claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.

*Said v. SBS Electronics, Inc.*, No. CV 08-3067(RJD)(JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010); *see also Krevat*, 2014 WL 4638844, at *7 ("Even if a plaintiff's

claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims.").

Ultimately, "[t]he decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015); *Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, 786 F. Supp. 2d 716, 726 (W.D.N.Y. 2011) ("It is within the sound discretion of the [d]istrict [c]ourt whether to enter a default judgment pursuant to Rule 55(b)(2), based on the assessment of the circumstances of the case and an evaluation of the parties' credibility and good faith.").

## II.    WILFULLNESS OF DEFAULT AND PREJUDICE TO TAT

Here, the Court easily concludes that TAT has established Gorilla's willfulness and that absent a default judgment, TAT, the non-defaulting party, would suffer prejudice.  Not only did Gorilla ignore TAT's pre-complaint efforts to resolve this matter, but Gorilla failed to respond both to the complaint and to the motion for a default judgment.  The complaint was served on January 31, 2022, Docket Item 6, and the motion for a default judgment was mailed to Gorilla's forwarding address provided by the United States Postal Service.  Docket Item 13.  "[The d]efendant's failure to appear, failure to respond to the [c]omplaint, and failure to respond to the instant motion sufficiently demonstrate willfullness."  *Krevat*, 2014 WL 4638844, at *6; *see also S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1988) (finding that defendant's failure to appear, and to respond to complaint and motion for default judgment, demonstrated willful conduct).

As for prejudice to TAT, this Court accepts as true, as it must, the allegations in the complaint that absent a default judgment, TAT will continue to suffer the trade dress infringement and unfair competition alleged in the complaint.  *Flanagan v. N. Star Concrete Contr., Inc.*, No. 13-CV-2300(JS)(AKT), 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014).  Moreover, because TAT's attorney has declared under penalty of perjury that Gorilla has continued to sell the offending products even after TAT's counsel sent Gorilla two cease-and-desist letters and even after this lawsuit was commenced, Docket Item 10-1 at ¶¶ 5-14, TAT has provided some support for those allegations.  With the willfulness of the defendant and the prejudice to TAT established, the Court turns to the merit of TAT's claims and any defenses.

## III.    MERITS OF THE CLAIMS AND DEFENSES

### A.  Trade Dress Infringement

"The concept of trade dress encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the consumer."  *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997); *see also Jeffrey Milstein, Inc. v. Greger Lawlor, Roth, Inc.*, 58 F.3d 27,31 (2d Cir. 1995).  To state a claim for trade dress infringement under section 43(a) of the Lanham Act, a plaintiff first must allege that "its trade dress is *either* inherently distinctive *or* that it has acquired distinctiveness through a secondary meaning." *Fun-Damental,* 111 F.3d at 999 (emphasis in original).  Trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source." *Id.* at 1000 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct.

2753, 2757, 120 L.Ed.2d 615 (1992)).  Inherently distinctive trade dress must also be "nonfunctional" to be entitled to protection.  *Id.* at 999.  "Second, [a] plaintiff must demonstrate that there is a likelihood of confusion between defendant's trade dress and plaintiff's." *Id.*

       1.  Distinctiveness

The Second Circuit evaluates trade dress distinctiveness by applying the trademark classifications used by Judge Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976).  *See Paddington Corp. v. Attiki Importers & Distrib., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993) (expressly applying the *Abercrombie* classifications to packaging).  Recognizing that the lines of demarcation between classifications may not always be bright, Judge Friendly delineated the classifications in "an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded":  1) generic, 2) descriptive, 3) suggestive, and 4) arbitrary or fanciful.  *Abercrombie*, 537 F.2d at 9.  "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection."  *Two Pesos*, 505 U.S. at 768.  Generic marks, however—those that "refer[] to the genus of which the particular product is a species," *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985) (citing *Abercrombie & Fitch, supra,* at 9)—are not registrable as trademarks and therefore not entitled to protection.  *Park 'N Fly,* 469 U.S., at 194, 105 S.Ct. at 661.

"Consumers generally rely on packaging for information about the product and its source.  But the varieties of labels and packaging available to wholesalers and manufacturers are virtually unlimited.  As a consequence, a product's trade dress typically will be arbitrary or fanciful and meet the inherently distinctive requirement for § 43(a) protection."  *Fun-Damental*, 111 F.3d at 1000 (citing *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.,* 65 F.3d 1063, 1069 (2d Cir.1995)); *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 703 (5th Cir.1981).  "[T]rade dress today encompasses a broad concept of how a product presented to the public looks, including its color, design, container, and all the elements that make up its total appearance."  *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.,* 65 F.3d 1063, 1069 (2d Cir.1995).  Moreover, "[a]lthough some of the individual elements of a trade dress are generic or descriptive, the impression given by all of them in combination may be inherently distinctive."  *Fun-Damental*, 111 F.3d at 1001.  Nevertheless, as the Second Circuit observed in *Fun-Damental*, "trade dress protection has its limits," and trade dress must be evaluated to determine whether it is "so distinctive as to point to a single source of origin."  *Id*. at 1000.

In its complaint, TAT alleges that it has been using a distinctive yellow and black color design for its blowers since at least January 2015.  Docket Item 1 at ¶ 20.  It says that "[t]he unique configuration and color design of TAT's [b]lowers has become distinctive in the minds of relevant customers and has acquired secondary meaning through TAT's extensive and continuous use."  *Id*. at ¶ 23.  In addition, TAT maintains that because of its advertising, sales, and marketing, and because of the unique and

distinctive color design of its blowers, those blowers have become known and recognized in the relevant market.  *Id*. at ¶ 24.

As an alternative to finding trade dress inherently distinctive, a court may find that trade dress has acquired distinctiveness through secondary meaning to establish the first prong of trade dress protection under the Lanham Act.  Based on its allegations in the complaint, TAT has established both that its trade dress is inherently distinctive and that its trade dress acquired distinctiveness through secondary meaning.

### 2.  Functionality

Whether a trade dress is or is not functional is a question of fact.  *LeSportsac, Inc.v. K Mart Corp.*, 754 F.2d 71, 77 (2d Cir. 1985).  "[T]rade dress is functional, and thus not protectable, when it is 'essential to the use or purpose of the article,'" *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed.Appx. 615, 620 (2d Cir. 2008) (citation omitted), or "if it affects the cost or quality of the article."  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001).  If trade dress is functional, "promotion of fair competition between producers demands that such trade dress be denied Lanham Act protection." *Fun-Damental*, 111 F.3d at 1002.  "When considering the functionality of a trade dress," courts "assess the degree of usefulness of the similar features on the competing dress, the degree of similarity between the non-useful, ornamental features of the packaging, and the feasibility of alternatives to the useful features."  *Id*.

Again, accepting TAT's allegations as true, as this Court must on a motion for a default judgment, the Court can reasonably infer that TAT's trade dress is nonfunctional and therefore entitled to protection under the Lanham Act.

3.  Likelihood of Confusion

"The question of whether the public is likely to confuse two products based on their packaging is not an easy one."  *Id.* at 1002.  The likelihood of confusion is examined in light of the following eight, non-exclusive factors articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961):

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009); *Fun-Damental*, 111 F.3d at 1002-1004 (applying *Polaroid* factors in trade dress case).

The strength of a trade dress largely depends on "tendency [of the trade dress] to identify the goods sold as emanating from a particular source, even when the source is unknown to the consumer."  *Fun-Damental*, 11 F.3d at 1003 (quoting *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1226 (2d Cir. 1987)).  Based on the overall effect of TAT's yellow and black design, and a review of the side-by-side color photographs of the blowers attached to the complaint, *see* Docket Item 1, this Court concludes that the first two *Polaroid* factors—the strength of the plaintiff's trade dress and the similarity of the two products—weigh in favor of TAT. Indeed, to this Court's untrained eye—probably no more expert than, and therefore similar to, the eye of the average consumer—the two products appear distinctive and virtually identical, so much so that it is unlikely that the similarity is a coincidence. Docket Item 1 at ¶¶ 19 and 26.  So it is reasonable to infer, as TAT alleges, *id*. at ¶ 23,

11

that TAT's product is so distinctive that a competitor might want to, and did, copy its unique design.

Because both TAT's and Gorilla's blowers are marketed in similar ways to the same consumers, *see id.* at ¶ 35-36, the proximity of the products weighs in favor of TAT as well.  Indeed, TAT attaches screen shots of the Gorilla blowers advertised on Amazon's ubiquitous website.  Docket Item 1-1 at 2-3; Docket Item 1-2 at 2.  And because Gorilla and TAT already sell in the same market, the fourth *Polaroid* factor, bridging the gap between markets, is irrelevant.  *See Home Instead, Inc. v. Tina Marie Markle and Home Care*, No. 19-CV-6842-EAW, 2021 WL 6797492, at *4 (W.D.N.Y. Mar. 9, 2021).

TAT does not offer proof of any actual consumer confusion, so the fifth *Polaroid* factor—evidence of actual confusion—does not weigh in TAT's favor.[3]  But the sixth factor—the defendant's bad faith—does: TAT alleges that the defendant's conduct is "knowing, willful, intentional, and malicious," Docket Item 1 at ¶ 40, and Gorilla has not responded to two letters, the complaint, and now this motion for a default judgment to offer any defense for, or explanation of, its actions, Docket Item 1-3 at 2-4 (complaint Exhibit C); Docket Item 1-4 at 2-5 (complaint Exhibit D); Docket Item 10.  TAT also alleges, upon information and belief, that Gorilla's blowers are "of inferior quality and offered at a lower price than the price offered by TAT for its superior [b]lowers," Docket

---

[3] TAT does allege, however, that the defendant's actions are "intended and likely to confuse, mislead, deceive customers, the public, and the trade as to the origin, source, sponsorship, or affiliation of [the defendant's] [b]lowers" and "likely to cause the public to believe erroneously that such products have been authored, sponsored, approved, endorsed, or licensed by TAT, or that TAT is in some way affiliated with [the defendant]."  Docket Item 1 at ¶ 45.

Item 1 at ¶ 31; because this Court accepts that allegation as true at this stage, the seventh factor weighs in favor of TAT as well.

Finally, as for the eighth *Polaroid* factor, TAT has not offered evidence—or even alleged—anything about the "sophistication of consumers in the relevant market."  *See Polaroid Corp.,* 287 F.2d at 495.  Nevertheless, because Gorilla's blowers are nearly identical to TAT's and it likely would be impossible for prospective customers to judge which product is superior without actually buying both, that factor may weigh slightly in favor of TAT.

In sum, accepting the allegations in the complaint as true, this Court concludes that TAT's trade dress is inherently distinctive and nonfunctional when viewed as a whole and that there is a likelihood of confusion based on Gorilla's use of the same trade dress.  TAT therefore has stated a viable claim for trade dress infringement under federal law and, in the absence of any defense—or even appearance—by the defendant, is entitled to a default judgment on that claim.  For the same reasons, TAT has stated a viable claim for trade dress infringement under New York law and is entitled to a default judgment on its New York common law claim for trade dress infringement as well.  *See Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.,* 25 F.Supp.2d 154, 166 (S.D.N.Y. 1998) ("The analysis for trade dress infringement is the same under both the Lanham Act and New York State common law.").

### B.  Unfair Competition

In New York, "[t]he essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods."  *Jeffrey Milstein, Inc. v. Greger,*

*Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (citations and internal quotation marks omitted); *see Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F.Supp.2d 634, 643 (S.D.N.Y. 2012) ("[A] plaintiff asserting an unfair competition claim under New York common law must also show that the defendant acted in bad faith.").  To recover for common law unfair competition, a "plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief," and it also must show the defendant's bad faith.  *Jeffrey Milstein*, 58 F.3d at 35.

As noted above, TAT alleges that the defendant's conduct was knowing, willful, intentional, and malicious, Docket Item 1 at ¶ 40, and Gorilla has not defended itself after having been sent two letters, a federal court complaint, and a motion for a default judgment, Docket Items 1-3; 1-4, 1 and 10.  That is more than enough to support a finding of bad faith.  *Am. Auto.,* 2019 WL 1349283, at *3.  Because TAT does not allege actual confusion, it is not entitled to damages and must rely on the likelihood of confusion to support its claim for injunctive relief.  But, as noted above, TAT does not seek damages, and based on the eight *Polaroid* factors, this Court already has concluded that there is a likelihood of confusion between TAT's and Gorilla's blowers. TAT therefore has stated a viable claim for unfair competition under New York common law and, in the absence of an appearance by the defendant, is entitled to a default judgment on its unfair competition claim.

IV.    RELIEF[4]

A. Injunctive Relief

In its motion for a default judgment, TAT seeks only a permanent injunction

"enjoin[ing] and restrain[ing] [the] [d]efendant . . . from . . . (a) using without the

authorization of TAT any of its trade dress rights, specifically including the air blowers

with the distinctive black and yellow color design, . . . and (b) using TAT's trade dress

marks . . . in the marketing, promotion, advertising, identification, sale[,] or distribution of

goods or services."  Docket Item 10-2 at 14-15.

As noted above, "[a] court may issue an injunction on a motion for a default

judgment provided that the moving party shows that (1) it is entitled to injunctive relief

under the applicable statute and (2) it meets the prerequisites for the issuance of an

injunction."  *Am. Auto., supra* at *4 (granting permanent injunction for trademark

infringement in context of default judgment); *see also Home Instead, supra* at *5

(same).  To obtain a permanent injunction, the plaintiff must demonstrate:  "(1) that i[t]

has suffered an irreparable injury; (2) that remedies available at law, such as monetary

damages, are inadequate to compensate for that injury; (3) that, considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is

---

[4] In its complaint, TAT sought the destruction of all unauthorized goods, the recall of product from the defendant's distributors or retailers, cancellation of any unfulfilled orders, an accounting and disgorgement of profits, treble damages, and punitive damages.  Docket Item 1 at 12-13.  In its motion for a default judgment, however, TAT abandons those requests for relief and seeks only a permanent injunction; destruction of all literature, signs, labels, packages, containers, advertising materials, and Internet content using or referencing the black and yellow air blowers; a report filed 30 days after entry of an injunction confirming under oath the defendant's compliance with the injunction; and attorneys' fees and costs.  Docket Item 10-2 at 14-15.

warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Granite Music Corp., supra* at 729.

As noted above, this Court has determined that TAT's and Gorilla's blowers are virtually indistinguishable and therefore likely to cause confusion in the marketplace. Despite TAT's best efforts, Gorilla has ignored requests to cease and desist and has failed to appear and defend its product. Given all that, this Court has little choice but to conclude that Gorilla will likely continue its infringing conduct. Moreover, as in any case of this sort based on product confusion and the defendant's unwillingness to engage in the judicial process, losses will be difficult to quantify. *See Am. Auto.*, 2019 WL 1349283, at *3. And the public interest weighs in favor of an injunction because "the public has an interest in not being deceived—in being assured that the [trade dress] it associates with a product is not attached to goods of unknown origin and quality." *Id*. at *5 (citations omitted). Therefore, this Court is satisfied that TAT is entitled to the injunctive relief it seeks.

### B. Attorneys' Fees and Costs

"The Lanham Act allows for an award of attorney's fees but only in 'exceptional cases' where a defendant demonstrates 'willful infringement.' The Court has the discretion to make such an award . . . . Defendant's default 'gives rise to an inference of willfulness.'" *Id*. at *5 (citations omitted). For all the reasons already stated, TAT has satisfactorily demonstrated the defendant's willful trade dress infringement and unfair competition sufficient to support a finding that this in an exceptional case warranting an award of attorneys' fees and costs.

TAT requests attorneys' fees of $11,092 for the work of three attorneys and a paralegal. The attorney hourly rates range from $245 to $275 for an attorney with three years' experience, to $410 for an attorney with eighteen years' experience, to between $410 and $425 for an attorney with more than twenty-five years' experience. Those rates are reasonable in the Western District of New York. TAT seeks an hourly rate of $210 for a paralegal, but it offers no explanation of the paralegal's experience. Without some explanation of that paralegal's extraordinary experience or expertise, the rate sought is high in this district. This Court therefore reduces the paralegal rate to $150 per hour, resulting in a small reduction of $78. *See* Docket Item 10-1 at 27. The Court finds that the costs associated with commencing this action and process server fees, totaling $682, are reasonable.

## CONCLUSION

For the foregoing reasons, TAT's motion for a default judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of TAT for $11,696 in attorneys' fees and costs.

In addition, it is hereby ordered that the defendant is permanently enjoined and restrained from:

1) Using without the authorization of TAT any of its trade dress rights, specifically including air blowers with the distinctive black and yellow color design, or that is otherwise confusingly or deceptively similar to any of TAT's trade dress rights, either alone or in conjunction with other words or symbols, as a part of any trademark,

service mark, logo, on or in relation to any goods or services sold or distributed by the defendants, or in any other manner; and

2)  Using TAT's trade dress marks in any form or manner that would tend to identify or associate Gorilla or its business or services with TAT, including, without limitation, in marketing, promoting, advertising, identifying, selling, or distributing goods or services.

It is further ordered, pursuant to Title 15 U.S.C. § 1118, that the defendant shall destroy all literature, signs, labels, prints, packages, wrappers, containers, advertising materials, Internet content (including all social media content), stationery, software, and any other items in its possession or control that contain the infringing designations of the TAT air blowers, specifically including any use or reference of the distinctive design of the black and yellow air blowers, alone or in combination with other images, words, or symbols.

Finally, it is further ordered that within thirty days of receipt of this decision and order, Gorilla shall file a written report under oath setting forth in detail how it has complied with this injunction.

SO ORDERED.

Dated:   March 3, 2023
            Buffalo, New York


_s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE